## Forman Building and Loan Association v. Prager et al.

Oscar Rosenbaum, for plaintiff; Samuel E. Kratzok, for defendants.

BROWN, JR., J., September —, 1933.—On December 21, 1925, defendants executed a collateral bond in plaintiff's favor in the amount of $3,000 conditioned for the payment of dues, interest, and taxes as set forth in bonds and mortgages given to plaintiff by I. Benjamin Shapiro, the then owner of premises 1530-32 Naudain Street, Philadelphia. Taxes for the years 1929 and 1930 not having been paid, plaintiff entered judgment on the collateral bond, and this judgment, upon defendants' petition, plaintiff's answer thereto, and depositions, we opened. The subsequent trial before a jury resulted in a verdict for defendants. Plaintiff moved for a new trial and for judgment n. o. v., and these motions were argued before the court in banc.

Title to the two properties became vested, through several conveyances, in Jacob Beratan, and when he did not keep up the payment of dues to plaintiff, the defendant Prager was sent for. Plaintiff's officers and Prager differed in their testimony as to what occurred then and later. Prager stated that plaintiff's officers (the secretary and conveyancer) agreed with him that if title to the properties was placed in the name of a strawman selected by plaintiff the defendants would be released of their obligation on the collateral bond; that Beratan conveyed the properties to Stanley E. Cole, plaintiff's strawman, by deed dated August 1, 1928, and that he (Prager) drew his check dated August 3, 1928, to the order of Louis Forman, plaintiff's secretary, in the amount of $159.72 as payment of half the interest on the first mortgage, interest on plaintiff's mortgage, and the taxes, the check being drawn to his order instead of the plaintiff so that it might be used immediately, instead of waiting until after its next meeting, in payment of the first mortgage interest to forestall foreclosure proceedings thereon. Plaintiff's officers denied making any such agreement with Prager and also that Cole was strawman for it. However, plaintiff's secretary testified that after title was in Cole's name, he (the secretary) collected the rent, the leases being turned over to him, and paid the taxes and other charges including dues to plaintiff.

The questions of fact as to whether such an agreement was made between plaintiff and defendants, and whether Cole was acting as strawman for plaintiff or for defendants, were submitted to the jury, and the verdict determined them in defendants' favor.

The oral agreement was not entered into at the time of the execution of the bond, and it did not change or contradict its terms (as in Hein v. Fetzer, 301 Pa. 403, cited by plaintiff), but it was a subsequent release from its obligations. "It is always competent for the parties to a written contract to show that it was subsequently abandoned in whole or in part, modified or changed, or that a new agreement was substituted for it. And this may be shown by parol, by showing either an express agreement, or actions necessarily involving the alterations": Anstead et al. v. Cook, 291 Pa. 335, 339. The trial judge instructed the jury that the defendants had the burden of proving the oral agreement upon which they relied, and the verdict shows that the jury was so convinced.

Plaintiff contends that, even if its officers agreed orally to release the defendants, it did not profit directly or indirectly or receive any consideration therefor. The answer is that it obtained title to the properties. True, this was in the name of a strawman, but the jury has determined the fact that he was acting for plaintiff. Its own secretary testified that he collected the rents and paid the taxes and other charges. It was "not only the owner of the bond, warrant of attorney and mortgage, with the shares of stock as collateral to the loan, but . . . the owner of the property also, with a right to collect the income therefrom and to receive any profit made on its resale, and a corresponding duty to pay or credit each month the dues, interest, premiums and fines. This duty" continued "so long as it" owned "the property, whether the title" was "in its own name or in that of some one else": Orient B. & L. Association v. Freud, 298 Pa. 431, 436, 437. That the holder of the first mortgage foreclosed and the properties were sold does not affect defendants. Plaintiff had title and could have protected itself in the foreclosure proceedings. Defendants are not responsible for its failure to do so.

The oral agreements of release considered in Erny v. Sauer, 234 Pa. 330, and in Stoer et al. v. Holtz, 104 Pa. Superior Ct. 579, were between mortgagor and mortgagee, and so it was held that there was no consideration for them as the mortgagor "did nothing more than it was his duty to do or what he could have

been compelled by legal process to do". In the present case, the defendants were not the mortgagors, and, they not having title to the properties, plaintiff could not have compelled them to transfer it. All that they agreed in their bond to do was to indemnify plaintiff from damage by reason of the failure of the mortgagor or his assigns to pay the dues, interest, and taxes, and by obtaining for plaintiff title to the property they did something which they were not obliged to do.

Plaintiff also contends that its secretary was without authority to enter into the oral agreement. No proof was offered as to the extent of his duties and powers, and so, there being no facts in dispute upon the point, the trial judge ruled properly that the question was one for us. No authority may be implied from that office to bind a building and loan association as to amounts due upon its mortgages: Johnston v. The Elizabeth B. & L. Association, 104 Pa. 394, 398; Erthal v. Glueck et al., 10 Pa. Superior Ct. 402, 408; or by an agreement to accept anything but money in satisfaction of a judgment held by it, unless ratified by the directors: Good Hope Building Association v. Amweg (No. 2), 22 Pa. Superior Ct. 145, 146; but the secretary has authority to furnish information as to the amount required to release a mortgage held by it and receive the money due and payable on it: Kilpatrick v. Home B. & L. Association, 119 Pa. 30, 35. Although there was no mention in the plaintiff's minutes of the agreement, it does not appear that there was anything in plaintiff's constitution and bylaws forbidding it (as in Workingman's L. & B. Association v. Heaton, 233 Pa. 173, cited by plaintiff). And there is no doubt that plaintiff benefited by the transaction. Dues were paid on account of its stock, and eventually the mortgage would have been. It was only through its own neglect, as above pointed out, that this did not occur. "Whether the secretary was or was not authorized to make the" agreement, "it is clear the association cannot have the benefit of the security and at the same time repudiate the contract by means of which they obtained it": Jones v. The National Building Association, 94 Pa. 215, 218. Defendants performed their part of the agreement fully and completely, and as plaintiff received the benefit of it, "it is, therefore, not in a position and will not be permitted to deny either the authority of its agent in negotiating the contract or its liability to comply with its terms": Lemmon v. The East Palestine Rubber Co., 260 Pa. 28, 33. Although Culbertson, Receiver, v. Cook et al., 308 Pa. 557, 563, held that "where . . . the transaction which the agent proposed [postponement of lien of mortgage] was clearly adverse to the interests of his principal, there could arise no implication that the agent was acting within the scope of his authority", Mr. Justice Drew recognized (p. 563) that the implied power of an agent extended to "acts on account of and for the benefit of" the principal. The latter was the situation in the present case, for the secretary acted for the benefit of plaintiff. It is to be noted that plaintiff's conveyancer and solicitor also knew of the transaction.

Plaintiff assigns as one of its reasons for a new trial after-discovered evidence. This consists of information received from Cole that he had acted "as a strawman at the request of Benjamin Prager in several transactions", and that he "took title to properties as grantee on numerous occasions at the request of said Benjamin Prager", according to his affidavit attached to plaintiff's motion. Plaintiff relies on this because Prager testified that he did not know Cole, but plaintiff knew in advance of trial that this question would be raised because defendants' petition to open the judgment contains the averment that Cole was its nominee, which, by the way, was not denied in the answer filed thereto. To entitle plaintiff "to a new trial on this ground [after-discovered evidence] the evidence must have been discovered since the trial, and be

such as could not have been obtained at the trial by the use of reasonable diligence; it must not be simply corroborative or cumulative or merely to impeach the credibility of a witness; and it must be such as would likely result in a different verdict if a new trial were granted": Hornick et al. v. Bethlehem Mines Corp., 310 Pa. 225, 228. We are not convinced that if a new trial is granted a different verdict would likely result. Cole's testimony, if the same as his affidavit, would merely tend to impeach Prager's credibility. Besides, he did not state that he acted for Prager in *this* transaction nor that he did *not* act for plaintiff in this or other matters.

Plaintiff's motion for judgment n. o. v. is dismissed, and a new trial is refused.